(39 App. Div. 166.)

GERMAN–AMERICAN BANK OF ROCHESTER v. DORTHY et al.

(Supreme Court, Appellate Division, Fourth Department. March 22, 1899.)

1. FORECLOSURE SALE—VACATION—SUFFICIENCY OF MOTION.
    Under rule 37, which requires a motion to vacate an order for irregularity to state the grounds of irregularity, on motion to vacate a foreclosure sale, it is not sufficient to state the grounds of irregularity in the moving affidavits only.

2. SAME –ORDER—VALIDITY.
    If, on motion to set aside a foreclosure sale for inadequacy of price, the affidavits as to the value of the property are conflicting, an order vacating the sale may properly be made conditional on the moving party giving an undertaking to furnish a purchaser at a higher price.

3. SAME—DISCRETION OF COURT—REVIEW.
    A motion to vacate a foreclosure sale for inadequacy of price is addressed to the sound discretion of the court, and therefore will not be disturbed on appeal if it does not appear that there was abuse of discretion.

Appeal from special term, Erie county.

Suit by the German-American Bank of Rochester against John F. Dorthy and others. From an order denying the motion of defendant Dorthy to set aside the foreclosure sale unless he comply with certain conditions, named in the order, said Dorthy appeals. Affirmed.

On the 25th day of July, 1898, the appellant gave notice of motion to the plaintiff, and to the referee who made the sale under a mortgage foreclosure judgment, which notice was not addressed to any of the other parties to the action, in which notice it was stated that the appellant would ask "for an order vacating and setting aside the judgment in this action, the sale of the premises described therein on the 21st day of June, 1898, and the deed of Charles D. Stickney as referee, given to the plaintiff in this action, together with all proceedings thereunder, on the grounds stated and disclosed in the affidavit of said Dorthy, herewith served, and the papers, judgment, decisions, and proceedings therein referred to, and for such other relief in the premises as may be just, with costs of this motion." In the order denying the motion a provision was inserted as follows: "It is ordered that said motion be, and the same is hereby, denied, with $10 costs, unless the defendant John F. Dorthy, within three days from the entry and service of this order, pay to Charles D. Stickney, referee herein, the sum of $86.13, that being the amount of his fees and the costs and expenses of such sale, and also within said three days cause to be delivered to the attorneys for the plaintiff an agreement with the plaintiff and the defendants Rudman and Lauer, as assignee, duly executed, satisfactory in form and substance to the attorneys for the plaintiff, obligating the party or parties executing the same to bid, at any resale of the said premises under the judgment herein that may hereafter be had in this action, the sum of at least $15,000 (no bid for a less amount to be accepted on such resale) for the undivided $10/_{18}$ parts of said premises heretofore sold, subject to the first mortgage upon the whole of said premises; and if said moneys are paid to said referee, and such agreement is delivered, then said sale, and the referee's deed, are hereby set aside, so far as may be necessary to permit a resale of said premises, but if, upon such resale, the party or parties executing such agreement fail to bid at least said sum of $15,000, or, having bid that amount, fail to pay the same, as required by the terms of sale, then the sale already had shall stand, and be in all respects firm and effectual, and in that event the rights of any of the parties to this action under said agreement shall remain unaffected."

Argued before HARDIN, P. J., and FOLLETT, ADAMS, McLENNAN, and SPRING, JJ.

John F. Dorthy (John Van Voorhis, of counsel), for appellant.
Joseph W. Taylor, for respondent.

PER CURIAM. The notice of motion does not state specifically any grounds of irregularity according to rule 37, which prescribes as follows: "When the motion is for irregularity, the notice or order shall specify the irregularity complained of." Wheeler v. Brady, 2 Hun, 346. It is not sufficient to state the supposed irregularity in the moving affidavits only. Montrait v. Hutchins, 49 How. Prac. 105; Lewis v. Graham, 16 Abb. Prac. 126.

2. By the terms of the order, a resale was ordered in the event the appellant complied with certain conditions, mentioned therein. By the affidavits used upon the motion it appeared that the $^{10}/_{18}$ of the 50 acres and a fraction were sold on the 21st of June at public auction for the sum of $12,600. Upon the whole premises there was a prior mortgage of $28,000, subject to which mortgage the sale of the $^{10}/_{18}$ was made. It is therefore apparent that at the sale the property was bid off by the plaintiff at a sum equivalent to $1,000 an acre, or $50,000 for the 50 acres and a fraction. The appellant, in his affidavit, stated that in his opinion the property was worth "at least the sum of $1,800 per acre"; and he further stated:

"I will agree to produce financially responsible bidders, who, if necessary, in order to protect said property, would bid at least sixteen hundred dollars per acre therefor, and I hereby offer, upon being required to do so, to make a valid agreement to that effect."

The appellant read several affidavits which stated the opinion of the witnesses as to the property and "its intrinsic value." The affidavit of Rich says:

"Its intrinsic value is the sum of $2,000 per acre."

The affidavit of Sanborn says:

"The present intrinsic value of the said Bleyle fifty acres is not less than the sum of $2,100 per acre."

The affidavit of Norris says:

"Its present intrinsic value is at least the sum of $2,250 per acre."

The affidavit of John C. Graves is to the effect, viz.:

"That, in my opinion, the fifty-acre piece of ground known as the 'Bleyle Farm,' just north of city line, is worth $2,000 per acre."

Cornell's affidavit says:

"Its present intrinsic value is the sum of $2,500 per acre, at least."

The affidavit of Cunningham states:

"Its present intrinsic value is the sum of $2,000 per acre."

The affidavit of Edwards states:

"Its present intrinsic value is the sum of $2,000 per acre."

Johnston's affidavit says:

"Its present intrinsic value is the sum of $2,000 per acre."

Cook's affidavit says:

"Its present intrinsic value is the sum of $2,100 per acre."

Lobdell's affidavit says:

"Its present intrinsic value is the sum of $2,000 per acre."

The affidavit of Stewart says: .

"Its present intrinsic value is at least the sum of $2,000 per acre."

The affidavit of Willoughby and Wilson says:

"Its present intrinsic value is the sum of $2,000 per acre."

The appellant, in an affidavit made the 5th day of August, 1898, says, viz.:

"I have made arrangements to raise the money to purchase the ten-eight-eenths interest described in the motion papers, and which was sold June 21, 1898, for twelve thousand six hundred dollars ($12,600). I am prepared, by having five days' time, to pay for said ten-eighteenths interest at least the sum of fifteen thousand dollars ($15,000), provided a valid deed thereof can be given. I further say that I herein now make said offer of fifteen thousand dollars, and state that I am authorized to do so by a person who is amply able financially to furnish the funds for that purpose."

Mr. Oakes says, in his affidavit, that:

"Said fifty-acre parcel is at present worth at least eighteen hundred ($1,800) dollars per acre."

William M. Judd states in his affidavit:

"The value of said premises described in the judgment in this action [I state] to be now at least eighteen hundred dollars ($1,800) per acre, and to have been of the same value on the 21st day of June, 1898."

It was shown by an affidavit that judgments were outstanding against Judd for over $1,400, and that three indictments for grand larceny were pending against him.

The affidavit of Arend stated that:

"In my opinion, said property, on the 21st day of June, 1898, was, and at the present time is, worth at least two thousand dollars per acre, and this estimate is based solely upon its market and intrinsic value."

Maginnis, in his affidavit, says:

"In my opinion, this parcel of about fifty acres is intrinsically worth in the market at least the sum of two thousand dollars per acre."

Nellany, in his affidavit, says:

"In my opinion, this parcel of about fifty acres is intrinsically worth in the market at least the sum of two thousand dollars ($2,000) per acre."

The respondent read numerous affidavits tending to show that the property sold for all it was worth. Mr. Clark L. Ingham states, in his affidavit, viz.:

"At the present time there is very little movement in real estate in that vicinity, and in my opinion said property at present, bid on at sale at public auction, will not produce to exceed ten hundred dollars ($1,000) per acre, and an undivided interest in said property would produce a relatively less amount."

H. C. Wadsworth states, in his affidavit, his familiarity with the property, and says:

"In my opinion, the said property, at the present time, at a sale at public auction, will not produce to exceed $1,000 per acre, and an undivided interest in said property would produce a relatively less amount."

George Sandrock, in his affidavit, places the value at $1,000 per acre.

Charles L. Gurney, in his affidavit, says:

"At the present time there is very little movement in real estate in that vicinity. In my opinion, the said property, at the present time, at a sale at public auction, will not produce to exceed five hundred dollars ($500) per acre, and an undivided interest in said property would produce a relatively less amount."

In the affidavit of Loran L. Lewis, Jr., he states facts showing his familiarity with the land in question, and says that "there has been no market for any of the real estate situate similarly to the property in question for the past five years," and that he lately foreclosed a mortgage upon property similarly situated, and the property was sold for $500 per acre. His affidavit adds:

"In deponent's opinion, at the present time, at a sale at public auction, it would not produce to exceed $1,000 per acre, and an undivided interest in said property a less amount."

He states that the property is assessed upon the county treasurer's books at the sum of $15,600.

The affidavit of Mary Bleyle, who formerly owned the property, and sold the same about eight years prior to making the affidavit, for $750 per acre, states that she had lived on the property some 24 years, and adds:

"That, in her opinion, the said property, at the present time, is worth but little, if anything, more than the above-mentioned sum, which she received for the same when she sold it."

Charles B. Hill stated his familiarity with the property, and stated, in his affidavit, viz.:

"At the present time there is very little movement in real estate in that vicinity. In my opinion, the said property, at the present time, at a sale at public auction, will not produce to exceed seven hundred and fifty dollars ($750) per acre, and an undivided interest in said property would produce a relatively less amount. In my opinion, the sum last above stated is very little, if anything, below the fair market value, at the present time, of the said property at private sale."

Eberhart, in his affidavit, states, viz.:

"In my opinion, the said property, at the present time, at a sale at public auction, will not produce to exceed eight hundred dollars ($800) per acre, and that sum would be a good price for same, and an undivided interest in said property would produce a relatively less amount."

Mr. Spencer S. Kingsley, in his affidavit, stated that he was engaged in the real-estate business, and had been so engaged for upward of eight years; that he was familiar with the property described as the Bleyle farm, and that he is familiar with the market value of real property in the vicinity of that farm, and states:

"The market for real estate in the vicinity of said property for the past two or three years has been very dull. Prior to that time it was very active, and prices advanced far above the actual value of the property. At the present time there is very little movement in real estate in that vicinity. In my opinion, the said property, at the present time, at a sale at public auction, will not produce to exceed seven hundred and fifty dollars per acre, and an undivided interest in said property would produce a relatively less amount."

His affidavit was sworn to on the 4th of August, 1898. He then was, or had been, president of the Real-Estate Exchange.

It was stated in the affidavit of Mr. Taylor that a large number of

persons attended the sale of the mortgaged premises on the 21st of June, and he named the attorneys of several of the parties who were present, and several of the defendants, and states the circumstances attending the sale, and alleges, on information and belief, that Judd attended the sale in behalf of the defendant Dorthy, and was in communication with Dorthy by telephone.

In the affidavit of Strauchen it is stated that he was present at the sale, and that he was one of the original parties to the purchase of the property in the fall of 1892. Strauchen states, in his affidavit, that on the 9th of December, 1896, he made an assignment of all of his property for the benefit of creditors to Frederick C. Lauer as assignee; and he adds:

"I further say that, at the time of the sale in this action, the only persons interested in said property as owners were said Stein, Baird, and said Lauer, as my assignee, and they were then in the possession thereof, and also held the record title thereto."

The affidavit of Horace McGuire stated that there was a surplus arising upon the sale of $5,893.01, and he further adds, in his affidavit, viz.:

"That the defendant Lauer, as assignee, etc., and as the owner of the said premises sold herein, is entitled to the whole or greater part of said surplus; that no notice of the motion to set aside the sale of said premises has been given to said Lauer, or to his attorneys; that, if said sale is set aside, the interests of said Lauer will be seriously jeopardized."

W. Martin Jones states, in his affidavit, viz.:

"The title in interest of said Dorthy in the premises long since passed to said Strauchen, and the latter's interest thereafter passed to said Lauer, as his assignee. The persons who were entitled to the possession of said premises at the time of the sale thereof in this action were the defendants Stein, Baird, and Lauer. Notice of the motion to set aside the sale herein has not been served on me. If the sale is set aside, the interests of the defendant Stein will be seriously jeopardized."

Mr. Howard W. Sneck makes an affidavit, in which he says he attended the sale, and bid upon the premises in the interest of Rudman, and he adds, viz.:

"No notice of any application to set aside said sale has been given to me. That if said sale is set aside, the interests of said Rudman will be seriously jeopardized."

Alexander Baird makes an affidavit, in which he states that he was present at the sale to protect his interests, and he adds:

"No notice has been given to me of the motion, which I am informed, and verily believe, has been made in behalf of the defendant Russell, to set aside said sale, nor has any such notice been given to me therein. If the said sale is set aside, my interest in said premises will be jeopardized."

It seems that, upon such of the affidavits as we have referred to and quoted from, the court properly exercised its discretion in refusing to set aside the sale, except upon condition; that the conditions named in the order are quite as favorable as the appellant was entitled to have from the special term. He has deliberately omitted to avail himself of the opportunity to give an undertaking to bid at least $15,000 upon a resale, and to comply with the other terms prescribed in the order. Under the rules and decisions applicable

to such questions as were presented to the special term, we think the action of the special term was in accordance with a wholesome discretion, and that the discretion was not abused; therefore it should be accepted by this court. Kellogg v. Howell, 62 Barb. 280, and cases referred to in the memorandum prepared in the case of Same Plaintiff v. Russell, 57 N. Y. Supp. 171. We think the order should be affirmed, with $10 costs and disbursements.

Order affirmed, with $10 costs and disbursements.